# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| TERESA AULDS | CIVIL ACTION NO. 05-363 |
|---|---|
| VERSUS | JUDGE ROBERT G. JAMES |
| BANCROFT BAG, INC. | MAG. JUDGE JAMES D. KIRK |

## RULING

Plaintiff Teresa Aulds ("Aulds") brings this suit against her former employer, Bancroft Bag, Incorporated ("Bancroft"), alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* ("Title VII"), and violations of her substantive rights and retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA").

Pending before the Court is a Motion for Summary Judgment [Doc. No. 7] filed by Bancroft. Aulds has filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 13]. Bancroft has filed a Reply [Doc. No. 17]. For the following reasons, Bancroft's Motion for Summary Judgment is hereby GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

Aulds was employed by Bancroft from October 8, 2002, until her termination on January 12, 2004. Bancroft is a manufacturing facility located in West Monroe, Louisiana, which makes multi-wall bags used for retail items such as dog and cat food and fertilizer. Aulds worked as an inspector on a machine that required an operator, an assistant operator, a helper, and an inspector.

Approximately six to nine months after Aulds was hired, Keith Pickett ("Pickett"), one of her co-workers, began to harass her. Aulds claims that Pickett asked her to have sex with him approximately two to six times.[1] Aulds also claims that Pickett sent her two text messages on her cell phone depicting silhouettes of naked women. Finally, Aulds claims that Pickett asked her to "get high" with him after work and that he followed her part of the way home on one occasion.

Aulds told one of her supervisors, Jimmy Murphree ("Murphree"), and the plant manager, Rod Pray ("Pray"), about the text messages. Although Murphree said that he would take care of the problem right away, Aulds said that she did not want Pickett to lose his job over the comments and that she would talk to him. Aulds also told Murphree that if she had any other problems with Pickett that she expected Murphree to tell the Director of Human Resources, Melanie Machnik ("Machnik"). Aulds spoke to Pickett herself and never complained again to Murphree or Pray, nor did she ever complain to Machnik.

From October 17, 2003, until December 1, 2003, Aulds took FMLA leave to have a hysterectomy performed. On December 1, 2003, Aulds returned to work without restrictions. She did not miss a single day of work until she was terminated on January 12, 2004. During this time, Aulds did not complain of pain or discomfort.

On Friday, January 9, 2004, Aulds was scheduled to work the day shift between 7:00 a.m. to 3:00 p.m. Aulds was asked to "work over" her shift, but she refused.[2] Aulds told Virginia

---

[1] Pickett would make remarks such as "I want to have sex with you [Aulds]" and "come on Teresa, let's do it" [Doc. No. 7, Exh. A, p. 88].

[2] Bancroft had an unwritten policy that employees who are asked to work over cannot refuse unless they are sick. Several years prior to Aulds' employment, Bancroft established this policy after employees falsely claimed they were sick in order to avoid working over. If an employee refuses to work over and claims to be sick, he or she must see a doctor that day and

Schoolfield, the lead inspector, that she could not work over because she needed to leave. She also told Demetrius Dobbins, a co-worker, that she was feeling bad, having female problems, and that she had a headache. Finally, she told Mike Osbon, a supervisor, that she had a headache and was sick.

After leaving work, Aulds went to her physician, Dr. Zeigler ("Zeigler"). Zeigler was in surgery and his assistant, Kim Cantrell ("Cantrell"), told Aulds to go to the emergency room if her condition worsened. Aulds did not go to the emergency room, but instead scheduled an appointment with Ziegler on the following Monday, January 12, 2004. Aulds claimed that she stayed in bed all weekend. On January 12, 2004, Aulds went to see Zeigler, but he was again out of the office. Aulds told Cantrell that she needed a doctor's excuse to return to work. Even though Aulds did not see Zeigler, Cantrell wrote Aulds an excuse and stamped it with Zeigler's signature.

Aulds returned to work on January 12, 2004, gave her doctor's excuse to Pray, and told him "here's your doctor's excuse." [Doc. No. 7, Exh. A, p. 72]. Pray gave Aulds' excuse to Machnik. Machnik thought it was strange that Aulds' excuse was dated three days after January 9, 2004, and she had her assistant call Zeigler's office to confirm Aulds' appointment. After Machnik learned that Aulds did not see Zeigler, she made the decision to terminate Aulds on January 12, 2004, because she had unexcused time off work and presented the company with a doctor's excuse under false pretenses. At the time of Aulds' termination, Machnik was unaware of her allegations of sexual harassment.

---

present an excuse before being allowed to return to work. Aulds knew about the policy on January 9, 2004.

On January 15, 2004, Aulds finally met with Zeigler to be examined. Zeigler testified in his deposition that he could not verify Aulds' complaints on January 9, 2004, because he did not see her. However, based on information that Aulds provided him, Zeigler described her condition as a "painful episode." [Doc. No. 7, Exh. 13]. Zeigler also noted that Aulds healed well after the hysterectomy and wrote a letter to Bancroft that stated Aulds had "abdominal pains and a headache." [Doc. No. 7, Exh. 12]. Zeigler noted that he had no record of any problems with her hysterectomy between October 29, 2003, and January 15, 2004. [Doc. No. 7, Exh. 16].

Aulds timely filed a perfected charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Department of Labor. Neither agency could conclude through its investigation that a statute had been violated. On December 1, 2004, Aulds received a notice of right to sue from the EEOC.[3]

On February 28, 2005, Aulds filed a complaint against Bancroft asserting claims of sexual harassment, violations of her substantive rights under the FMLA, and retaliatory discharge.

On February 17, 2006, Bancroft filed a Motion for Summary Judgment. On March 24, 2006, Aulds filed a Memorandum in Opposition. On March 31, 2006, Bancroft filed a Reply.

With full briefing by all parties completed, the Court is now prepared to rule on the Motion for Summary Judgment.

---

[3] The FMLA does not require a person to pursue administrative remedies through the Department of Labor prior to filing suit. *See Cookston v. Freeman, Inc.*, No 3:98-CV-2106-D, 1999 WL 714760, at *4, n.7 (N.D. Tex. Sept. 14, 1999).

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B.     Title VII**

Title VII forbids employers to take actions on the basis of sex that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of sex discrimination prohibited under Title VII. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57 (1986).

**1.     Sexual Harassment**

To prevail on a sex-based harassment claim alleging hostile work environment, the plaintiff must prove: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Green v. Adm'rs. of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002) (internal citation omitted).

In determining whether a workplace constitutes a hostile work environment, courts should look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id*. at 23. Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale v. Sundowner Offshore Svcs. Inc.*, 523 U.S. 75, 81 (1998). A recurring point in the Supreme Court's hostile environment cases is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher*, 524 U.S. at 788. The standards set forth by the Supreme Court seek to ensure that

Title VII does not become a "general civility code." *Oncale*, 523 U.S. at 80. Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher City of Boca Raton*, 524 U.S. 755, 788 (1998) (quoting B. LINDEMANN & D. KADUE, SEXUAL HARASSMENT IN EMPLOYMENT LAW 172 (1992)). The Supreme Court has made it clear that conduct must be so extreme, so severe and pervasive, as to amount to a change in the terms and conditions of employment. *Id*. The objective severity of the harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Oncale*, 523 U.S. at 81.

In its Motion for Summary Judgment, Bancroft argues that the alleged harassment was not objectively severe or pervasive. According to Aulds, Pickett engaged in the following incidents of sexual harassment:

(1) Pickett sent her two text messages depicting silhouettes of nude women;

(2) Pickett asked her to have sex with him approximately two to six times;

(3) Pickett asked her to go riding with him and get high; and

(4) Pickett followed her part of the way home on one occasion.

The Court finds that Aulds has not presented sufficient evidence to create a genuine issue of fact that the alleged harassment was so severe or pervasive as to affect a term or condition of her employment. *See Mernik v. Classic Cars, Inc.*, No. Civ. A. 3:99-CV-1327, 2000 WL 869398, at *9-11 (N.D. Tex. June 28, 2000) (inappropriate sexual cartoon and sexual innuendos, while unprofessional, were not actionable under Title VII); *Hockman v. Westward Commc'n, L.L.C.*, 2003 WL 22176152 at *20 (E.D. Tex. Sept. 18, 2003) (finding that brushings, one

7

attempted kiss, and one isolated grabbing of plaintiff's breasts is not severe and pervasive as a matter of law); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999) (finding that several inappropriate comments and touchings over the course of two years were not objectively severe or pervasive enough to constitute actionable sexual harassment); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (finding that conduct that included attempting to kiss plaintiff twice at work, several incidents of unwanted touching, and asking plaintiff out on dates were not sufficient for actionable harassment).

While Pickett's conduct was childish, offensive, and boorish, the complained of conduct was not so severe or pervasive as to affect a term or condition of Aulds' employment. Accordingly, the Court finds that Bancroft's Motion for Summary Judgment on Aulds' claim of sexual harassment is GRANTED, and it is DISMISSED WITH PREJUDICE.

### 2. Retaliation

Aulds claims that Bancroft terminated her and subsequently refused to rehire hire her in retaliation for her complaints of sexual harassment. In order to state a *prima facie* case of retaliation, Aulds must show that (1) she engaged in an activity protected by law; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. *See Shackleford v. Deloitte & Touch, LLP*, 190 F.3d 398, 407-408 (5th Cir. 1999). The causal link required by the third prong of the *prima facie* case does not rise to the level of a "but for" standard. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citation omitted). If a plaintiff makes a *prima facie* showing, then "an inference of retaliatory motive" is raised. *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001) (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)).

To overcome this retaliatory inference, the defendant must produce evidence of a legitimate non-retaliatory purpose for the employment action. *Gee*, 289 F.3d at 345 (citation omitted); *see also Fierros*, 274 F.3d at 191.

Finally, if the defendant satisfies its burden of production, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose. *Gee*, 289 F.3d at 345.

### a. Retaliatory Discharge

Bancroft contends that Aulds cannot satisfy her *prima facie* case of retaliatory discharge because Machnik had no knowledge of Aulds' complaint of sexual harassment prior to her termination.

Aulds testified in her deposition that she told both Pray and Murphree about the alleged sexual harassment. However, Aulds admits that she never told Machnik, the decision maker in her termination, of her complaint. She also admits in her deposition that Machnik would have no way of knowing about her complaint. In addition, she admits that she told Murphree not to say anything to Machnik unless Pickett continued to harass her after she had spoken with him.

The Fifth Circuit has held that when a decision maker has no knowledge of a protected activity, the employer cannot be held liable for retaliation. *See Ackel v. National Commc'n, Inc.*, 339 F.3d 376, 386 (5th Cir. 2003) (citing *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

The Court finds that under these circumstances, Aulds has not presented sufficient

9

evidence to create a genuine issue of material fact that Machnik was aware of Aulds' sexual harassment complaint prior to her termination. Accordingly, Bancroft's Motion for Summary Judgment on Aulds' claim of retaliatory discharge is GRANTED, and it is DISMISSED WITH PREJUDICE.

### b. Retaliatory Refusal to Rehire

It appears to the Court that Aulds is also claiming that Bancroft refused to rehire her in retaliation for filing a charge of discrimination. Machnik claims she was not aware of Aulds' sexual harassment prior to terminating her. However, after her termination, a grievance hearing was held on January 19, 2004, where Aulds contested her termination, and Machnik was notified of Aulds' prior sexual harassment complaint.

Assuming, arguendo, that Aulds can satisfy her *prima facie* case, Bancroft has produced evidence of a legitimate non-retaliatory purpose for the employment action: Aulds had unexcused time off work and she filed a doctor's excuse under false pretenses. Because Bancroft has proffered a legitimate non-retaliatory reason for the challenged employment action, the burden shifts back to Aulds to demonstrate that she would have been rehired, but for her complaints of sexual harassment.

Whether the evidence presented by the plaintiff is direct or circumstantial, it must be substantial. *Hamlett v. Gonzales*, 2005 WL 1500819 at *12 (N.D. Tex. June 15, 2005) (citing *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998)). In this case, Aulds has failed to present any evidence that Bancroft's legitimate non-retaliatory reason is mere pretext. Aulds has failed to set forth specific facts indicating that she would have been rehired, but for her complaints of sexual harassment. *See Sims v. Medical Center of Baton Rouge, Inc.*, No. Civ. A.

10

96-3371, 1997 WL 436258, at *8 (E.D. La. Aug. 1, 1997) (granting summary judgment where plaintiff failed to present evidence of pretext in retaliatory failure to rehire claim); *cf. Carter v. TCI Media Serv.*, No. CA 3:97-CV-1096-R, 1998 WL 686777, at * 8 (N.D. Tex. Sept. 29, 1998) (denying summary judgment where plaintiff presented evidence of pretext in retaliatory refusal to rehire).

The Court finds that Aulds has not presented sufficient evidence to create a genuine issue of material fact that Bancroft's legitimate non-retaliatory reason for the challenged employment action is pretext. Accordingly, Bancroft's Motion for Summary Judgment on Aulds' claim of retaliatory refusal to rehire is GRANTED, and it is DISMISSED WITH PREJUDICE.

### C. Family Medical Leave Act

The FMLA attempts to balance the needs of the workplace against the needs of families. 29 U.S.C. § 2601. The FMLA allows an eligible employee to take twelve work weeks of leave in a twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *See* 29 U.S.C. § 2612(a)(1)(D). The FMLA contains prescriptive obligations to grant eligible employees substantive rights guaranteed by the FMLA and proscriptive obligations not to penalize employees for exercising these rights. *See Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999).

#### 1. Serious Health Condition

A serious health condition entitling an employee to FMLA leave means an "illness, injury, impairment, or physical or mental condition that involves" either inpatient care or continuing treatment. *See* 29 C.F.R. § 825.114(a)(1) and (2). Generally, the condition must involve a period of incapacity "of more than three consecutive calendar days" that involves

11

treatment by a health care provider two or more times or "on at least one occasion that involves a regimen of continuing treatment." 29 C.F.R. § 825.114(a)(2)(i)(A-B).

However, a chronic serious health condition "[m]ay cause episodic rather than a continuing period of incapacity (e.g. asthma, diabetes, epilepsy, etc.)." 29 C.F.R. § 825.114(a)(2)(iii)(C). Such chronic serious health conditions are also covered by the FMLA, even if there was no treatment by a health care provider and the condition involves a period less than the required period of incapacity of more than three consecutive calendar days.

Aulds argues that her substantive rights under the FMLA were violated because she has a serious health condition. She argues that even if her headaches and pain on January 9, 2004, were determined not to be related to her hysterectomy, she is nonetheless entitled to the FMLA's substantive protections. [Doc. No. 13, p. 3].

Bancroft argues that Aulds does not qualify as having a serious health condition because she never saw a doctor before her termination, did not undergo continuing treatment by a health care provider after her hysterectomy, and was not incapacitated for more than three consecutive calendar days.

Zeigler testified in his deposition that, after Aulds' hysterectomy, she healed well and appeared to be in good condition. Zeigler also testified that he had no record of Aulds reporting any pain after she had her hysterectomy. In fact, he only saw Aulds on one occasion after her hysterectomy, several days after her termination, on January 15, 2004.

Under these circumstances, the Court finds that Aulds has not created a genuine issue of material fact that she was entitled to substantive rights under the FMLA because of a serious

health condition. Accordingly, Bancroft's Motion for Summary Judgment on Aulds' FMLA claim is GRANTED, and it is DISMISSED WITH PREJUDICE.[4]

### 2. Retaliation

To establish a *prima facie* case of retaliation under the FMLA, Aulds must demonstrate that (1) she is protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) Aulds was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of Aulds' request for leave. *See Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).

The Court finds that Aulds has failed to establish the first element of her *prima facie* case. Because the Court has already determined that Aulds failed to demonstrate that she had a serious health condition, she was not protected under the FMLA. Therefore, Bancroft's termination of Aulds could not be in retaliation for exercising her substantive rights under the FMLA. *See Lockhart v. Home Interiors & Gifts, Inc.*, No. 4:04CV301, 2006 WL 887387, at *6 (E.D. Tex. Mar. 29, 2006) (granting summary judgment on plaintiff's retaliation claim because she did not produce evidence that she had a serious health condition); *see also Rogers v. Bell Helicopter Textron Inc.*, No. CA3-99-CV-988-R, 2000 WL 1175647, at *3 (N.D. Tex. Aug. 17, 2000) (same). Accordingly, Bancroft's Motion for Summary Judgment on Aulds' claim of retaliation under the FMLA is GRANTED, and it is DISMISSED WITH PREJUDICE.

---

[4]The Court also notes that Aulds has not presented any evidence that her condition could qualify as a chronic serious health condition.

### III. CONCLUSION

For the foregoing reasons, Bancroft's Motion for Summary Judgment [Doc. No. 7], is GRANTED, and Aulds' claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 3rd day of May, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE